UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN L. MACK,<br><br>   Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>   Defendant. | Case No. 12-cv-01221 NC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 15 |

  Plaintiff Steven Mack seeks judicial review of the Commissioner of Social Security's final decision denying Mack's claim for Supplemental Security Income ("SSI") as a person disabled and unable to engage in substantial gainful activity. Both parties move for summary judgment. The issues are (1) whether the ALJ properly weighed the medical opinions, and (2) whether substantial evidence supports the ALJ's decision. The Court finds that the ALJ did not err in weighing the medical opinions and that substantial evidence supports his finding that Mack is not disabled. Accordingly, the Court DENIES Mack's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

//

# I. BACKGROUND

### A. Agency Review

On December 16, 2008, Mack applied for SSI benefits on the basis that he was disabled since March 1, 2008 because he heard voices and had difficulty focusing and controlling his anger. (AR 139, 59.) The Social Security Administration ("SSA") denied Mack's request for SSI benefits on June 9, 2009. (AR 74-77.) Based on reports from Sausal Creek Outpatient, MDSI Physician Group, and Health Analysis, the SSA found Mack's condition was not severe enough to be considered disabling. (AR 74.) It noted specifically that Mack was able "to think, communicate and act in [his] own interest . . . adjust to ordinary emotional stresses, and to get along with others, as well as to do [his] usual activities and to remember and follow basic instructions." (AR 74.) The SSA concluded that "the evidence does not show any other impairment which would significantly restrict you from performing work related functions." (AR 74.) Mack requested that his claim be reconsidered. (AR 78.) The SSA denied this request because Mack had not indicated any new sources of impairment. (AR 79.)

### B. Administrative Review

Mack sought administrate review of the SSA's decision. (AR 85-87.) At a hearing before Administrate Law Judge Alan K. Goldhammer on April 12, 2011, Mack testified about his mental health and how that affected his ability to interact with others. (AR 29-49.) Medical expert Robert McDevitt, M.D., also testified. (AR 49-56.)

#### 1. Mack's Testimony at the April 12, 2011 Hearing

Mack is forty-two years old, obtained his GED in prison, and, at the time of the hearing, had been homeless for three years, although he had previously lived with a cousin. (AR 29-30.) Mack testified that he is depressed, hears voices, and is generally uncomfortable around people. He feels hopeless most of the time and often cries. (AR 37, 38.) Interacting with people makes him tense. (AR 36.) For example, he does not like to have people standing close to him and will leave soup kitchen lines, even when he is hungry, to avoid a crowd. (AR 35.) He refuses to go to a shelter because he does not trust

the people there and worries about the germs and diseases he could contract. (AR 36.) The voices Mack hears vary from cynical, to angry, to philosophical. (AR 43.) Mack stated that as he has gotten older, he has learned not to follow the directions of the voices. (AR 43, 45.) He stated that the medication he was prescribed helps with the voices, but that he cannot shut them off and still hears them. (AR 42, 43.)

Mack testified that he had a history of marijuana use, but that he had stopped smoking because it interfered with his medications, and at the time of the hearing, he had not smoked in three months. (AR 41.) Mack was in jail several weeks before the hearing for cashing a forged check. (AR 40, 44-45.) He also admitted to having a physical altercation in People's Park in or around March 2011, (AR 42), and, in 2008, he held a knife to his ex-fiancée's throat and cut her stomach, (AR 31, 200). Mack spent time in a juvenile detention facility, jail, and prison, but was always in the general population and was never treated for mental illness while incarcerated. (AR 47-48.)

Mack gets his meals from soup kitchens at Trinity Church or People's Park. (AR 30.) He received general assistance at one point but failed to turn in necessary paperwork and, at the time of the hearing, had been cut off. (AR 37.) He has never been employed for more than a few weeks, and at the time of the hearing, had not worked since 2007. (AR 200.) He has intermittently worked as a painter, a host, a cashier, a roofer, a forklift driver, and in sales. (AR 32, 200.) In 2007, he worked for RediTemp to clean out a warehouse, but he left the job because his coworkers agitated him. (AR 33.)

**2. The ALJ's Findings**

On April 22, 2011, the ALJ issued his decision, finding that Mack was not disabled by his mental illness and that he retained sufficient residual functional capacity for medium work. (AR 16, 18-19.) The ALJ analyzed Mack's claims under the five-step evaluation process for determining disability. (AR 12-13); *see* 20 C.F.R. § 416.920(a).

At step three, the ALJ considered the evidence in the record of Mack's mental illness and found that it did not satisfy or medically equal the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 required for a finding of disability. (AR 14.)

Specifically, the ALJ found that Mack suffered from mental health issues, but that the medical evidence did not support the severity of Mack's alleged symptoms. (AR 15.) In support of the conclusion, the ALJ relied on Mack's testimony of being independent in his daily living activities, and observations of treatment providers that Mack dresses and grooms himself appropriately. (AR 15.) The ALJ compared Mack's testimony that he prefers to be alone, with the consistent description by treatment providers of Mack as cooperative, forthcoming, and polite, and the fact that Mack maintains contact with some of his cousins. (AR 15.) The ALJ also found no evidence that psychotic symptoms interfere with Mack's ability to concentrate. (AR 15.) He relied on the opinion of consultative examiner Dr. Ede Thomsen, Mack's inclusion in the general prison population and ability to get his GED, and Mack's two week stay at Villa Fairmont, during which no provider observed him with psychotic symptoms, to reach this conclusion. (AR 15.)

At step four, the ALJ considered the extent to which Mack's impairments, both severe and non-severe, limited his ability to do basic work activities. (AR 17.) In this analysis, the ALJ considered the opinions of various experts and treatment providers. (AR 18.) The ALJ found unpersuasive the reports of Dr. Thomsen, and treatment provider Joan Klein, MSW, of LifeLong Medical Care, both of whom found Mack to suffer from psychosis. (AR 18.) The ALJ found that Dr. Thomsen's conclusions were based on Mack's childhood symptoms and the results of a screening test, and had no factual basis to support them. (AR 18.) The ALJ found Klein's opinion was based only on one twenty-minute interview and thus also lacked objective support. (AR 18.)

**C.   The Appeals Council's Denial of Review**

Mack appealed the ALJ's decision to the Appeals Council on June 2, 2011, arguing that the ALJ should have given more weight to Klein's opinion and the records from LifeLong Medical Care and that the record as a whole establishes that he is disabled. (AR 2, 206-218.) In conjunction with his appeal, Mack submitted additional evidence of his visits to LifeLong Medical and his meetings with Klein during December 2010 through February 2011. (AR 2, 5.)

The Appeals Council considered this additional evidence and found that Mack had met with Klein four times before she completed the medical impairment questionnaire reviewed by the ALJ. (AR 2.) Nevertheless, the Appeals Council held that the ALJ was correct in not according great or controlling weight to Klein's opinion because Klein is not an acceptable medical source; her notes were sparse; Mack was referred to LifeLong by his disability advocate and at the time of his first visit he already had a pending SSI claim; and the record supported the ALJ's conclusion that Mack is not disabled. (AR 2.)

The Appeals Council also addressed the ALJ's treatment of the Villa Fairmont records. (AR 2.) It ultimately denied Mack's request for review. (AR 1.)

## II. STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). "When the Appeals Council denies a request for review, . . . the ALJ's decision becomes the final decision of the Commissioner." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation and quotation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal citation and quotation omitted). It is evidence that a reasonable mind would accept as adequate to support the conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal citation and

quotation omitted).

When reviewing the ALJ's weighing of medical evidence, additional standards apply. *Id.*; 20 C.F.R. §416.927. Generally, "the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." *Ryan*, 528 F.3d at 1198. In addition, if a claimant has a treatment relationship with a provider, and that provider's opinion is supported by clinical evidence and not inconsistent with the record, the provider will be given controlling weight. 20 C.F.R. §416.927(c)(2). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (internal citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Furthermore, if the treating physician's opinion is conclusory, brief, and unsupported by clinical findings, an ALJ need not accept it in light of conflicting opinions. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

### III. DISCUSSION

**A.  Substantial Evidence Supports the ALJ's Determination that Mack Does Not Suffer from Severe Psychosis.**

Mack argues that the ALJ erred in concluding that he does not suffer from severe psychosis at step two of the analysis. For the reasons discussed below, the record does not support a finding that Mack suffers from severe psychosis. In addition, at step three of the analysis, the ALJ considered Mack's severe and non-severe impairments in order to determine whether he is disabled. Therefore, despite the ALJ's finding that Mack does not suffer from severe psychosis, his claims of psychosis and the impact of his symptoms were considered in the ultimate determination of disability.

**B.  Substantial Evidence Supports the ALJ's Determination that Mack Is Not Disabled.**

The ALJ determined that Mack's mental health issues did not meet or medically equal the criteria for impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Mack argues in his motion for summary judgment that, in reaching this conclusion, the ALJ

improperly weighed the medical opinions in the record. Specifically, Mack contends that the opinions of the LifeLong Medical providers, and particularly Joan Klein, MSW, should have been given the most weight because of the extent of Mack's treatment by the LifeLong team. Mack argues that the Appeals Council erred in concluding that Klein is not an acceptable medical source and that her assessment, if properly considered, would have changed the ALJ's determination of the severity of his impairment. Mack further claims that Klein's opinion that he suffers from psychosis is supported by the records from his stay at Villa Fairmont. Mack argues that these sources indicate that he suffers from psychosis severe enough to be considered disabled at step three of the analysis.

### 1. Klein's Medical Impairment Questionnaire and Notes

The ALJ found that Klein's assessment was not sufficiently supported by objective evidence and rejected the conclusions in her medical impairment questionnaire. The ALJ stated that Klein's report was "impressive on its face," but was "based exclusively on a 20-minute interview" and therefore on information provided by Mack, rather than clinical or objective evidence. (AR 18.) The Appeals Council considered Klein's notes from four visits with Mack, all but the initial visit lasting forty-five to fifty minutes, (AR 385-391), and concluded that because Klein is not an acceptable medical source and her assessment conflicts with the record as a whole, the ALJ properly decided not to accord Klein's assessment great or controlling weight.

The distinction between "acceptable medical sources" and "other sources" is important because only acceptable medical sources can be considered treating sources and accorded great or controlling weight. *See* 20 C.F.R. § 416.927(c). Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 416.913(a), 416.913(a). Medical sources not listed as an acceptable medical source are considered "other sources." 20 C.F.R. § 416.913(d)(1). Licensed clinical social workers, therapists, public and private social welfare agency personnel, and rehabilitation counselors are not acceptable medical sources. SSR 06-03p; s*ee also* 20 C.F.R. § 416.913(d).

Case No. 12-cv-01221 NC
ORDER RE: SUMMARY JUDGMENT         7

According to Mack's briefs, Klein is a social worker. A social worker, even a licensed clinical social worker, is not an acceptable medical source under the regulations, and therefore cannot be given great or controlling weight. Nevertheless, Mack urges the Court to consider the opinion of Klein as an acceptable medical source and a treating source because she was part of an interdisciplinary team that included licensed physicians. Mack testified that he saw Dr. Murdoch and Klein at LifeLong (AR 34), and argues that because Klein's notes were cosigned by a doctor or accompanied by a statement that a doctor reviewed and concurred with her findings, a close working relationship existed between Klein and an acceptable medical source.

In *Gomez v. Chater*, the Ninth Circuit upheld an ALJ's decision according greater weight to the opinion of a nurse practitioner who worked closely under the supervision of a licensed physician, consulted with the physician "numerous times" about the claimant's treatment, and acted as an "agent" of the physician in her relationship with the claimant. 74 F.3d 967, 971 (9th Cir. 1996). The Ninth Circuit held that because the nurse practitioner was an "agent" of the physician, "her opinion was properly considered as part of the opinion of [the physician], an acceptable medical source." *Id.* In reaching this conclusion, the Ninth Circuit relied on 20 C.F.R. § 416.913(a)(6), which stated, "[a] report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence." *Id.*

In 2000, the Social Security Administration deleted 20 C.F.R. § 416.913(a)(6) as "redundant and somewhat misleading." 65 Fed. Reg. 34950-01, 34952 (July 3, 2000). The SSA clarified that acceptable medical sources are individuals, and the inclusion of an acceptable medical source's evaluation in an interdisciplinary report does not transform the report into an acceptable medical source. *Id.*

The Ninth Circuit has not explicitly addressed the impact of the repeal of § 416.913(a)(6) on *Gomez*. The court has, however, continued to cite to *Gomez* and apply its rule as a narrow exception to the "acceptable medical sources" definition contained in the regulations. *See, e.g.*, *Taylor*, 659 F.3d at 1234 ("To the extent [the] nurse practitioner

was working closely with, and under the supervision of [the physician] her opinion is to be considered that of an 'acceptable medical source.'"); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (declining to address *Gomez*'s continued applicability but affirming the ALJ's decision not to consider the opinion of a physician's assistant as an acceptable medical source because "the record [did] not show that she worked under a physician's close supervision").

Most district courts have interpreted the revision to § 416.913 to underscore the narrow scope of the exception created by the Ninth Circuit in *Gomez*. *See, e.g.*, *Davis v. Astrue*, 11-cv-01819 PJH, 2012 WL 3011223, *16 (N.D. Cal. July 23, 2012) ("*Gomez* does not stand for the proposition that any medical professional, who would not otherwise be considered an "acceptable medical source," is transformed into an "acceptable medical source" merely because he or she is supervised to any degree by a physician."); *Garcia v. Astrue*, No. 10-cv-00542 SKO, 2011 WL 3875483, *13 (E.D. Cal. Sept. 1, 2011) ("Only in circumstances that indicate an agency relationship or close supervision by an 'acceptable medical source' will evidence from an 'other source' be ascribed to the supervising 'acceptable medical source.'"); *Ramirez v. Astrue*, 803 F. Supp. 2d 1075, 1082 (C.D. Cal. 2011) (physician's signature on client plan prepared by a social worker did not establish that the social worker worked under the physician's close supervision while treating claimant or preparing reports, and therefore social worker was not an acceptable medical source); *Vasquez v. Astrue*, 08-cv-00078 CI, 2009 WL 939339, *6 n.3 (E.D. Wash. Apr. 3, 2009) (affirming ALJ's determination that physician's assistant was not part of an interdisciplinary team and thus an acceptable medical source where there was no evidence that the signature or initial on the physician's assistant's report was made by a physician).

Here, the facts in the record do not establish that Klein is an agent of an acceptable medical source as described in *Gomez*. First, Klein's report regarding the severity of Mack's mental illness—the mental impairment questionnaire considered by the ALJ—was prepared and signed only by Klein. (AR 377-381.) Second, the records from LifeLong Medical submitted to the Appeals Council do not establish that a close supervisory or

agency relationship existed between Klein and an acceptable medical source. Although Klein's notes from February 28, 2011 indicate that she discussed medication with Dr. Love, as a social worker, Klein lacked the ability to prescribe any medications to Mack. (AR 385.) Merely because a physician prescribed medications to Mack does not establish that Klein had a close supervisory relationship with Dr. Love akin to agency. Klein's notes from February 18 bear another signature, but there is no indication that the other signature is a physician or an acceptable medical source. Nor is there any other evidence in the record that Klein worked so closely with an acceptable medical source that she was effectively its agent. (AR 386.) Klein's notes from December 6, 2010 indicate that Dr. Murdoch was supposed to fill out a "GA medical exemption" form for Mack, but say nothing about Murdoch's or Love's involvement in Mack's treatment or evaluation. (AR 388.)

A form appears twice in the records from LifeLong that states in typeface "Along with today's health care provider, I have personally seen and accessed the patient. I have reviewed the provider's assessment and treatment plan. Unless otherwise noticed, I concur with all elements in the provider's notes, with confirmation as indicated by my signature below." One such form is not signed by anyone and the date on the form (December 13, 2010) does not correspond to any notes from Klein. (AR 389.) The other form is signed by Dr. Love and bears the same date (December 1, 2010) as Klein's initial, twenty-minute assessment of Mack. (AR 391.) One boilerplate form, without more facts, is insufficient to establish the close supervisory relationship and numerous consultations described in *Gomez*. Rather, the records from LifeLong indicate that Klein had several counseling sessions with Mack, that Dr. Love wrote at least one prescription for him, and that Dr. Murdoch ordered blood work and wrote prescriptions, but that neither physician was involved in Klein's evaluation of Mack's mental health. Accordingly, substantial evidence supports the Appeals Council's categorization of Klein's assessment.

Even if Dr. Love's signature and boilerplate forms indicated that Klein acted as his agent and therefore the records from LifeLong could be considered as from an acceptable

Case No. 12-cv-01221 NC
ORDER RE: SUMMARY JUDGMENT    10

medical source, the Commissioner properly weighed and discounted Klein's report. "In order to reject the testimony of a medically acceptable treating source, the [Commissioner] must provide specific, legitimate reasons based on substantial evidence in the record." *Molina*, 674 F.3d at 1111. Here, without deciding whether she was an acceptable medical source, the ALJ found that Klein's assessment was not sufficiently supported by "objective evidence" because it was based "on material provided by the claimant" during a twenty minute interview. (AR 15, 18.) After reviewing the records of Mack's four other appointments with Klein, the Appeals Council gave several additional reasons for not according great weight to Klein's assessment: (1) Klein's notes were sparse; (2) the context of the visits indicates that the characterization of Mack's symptoms may have been colored by a need for financial assistance; and (3) the other evidence in the record is inconsistent with Klein's assessment. (AR 2.) The Commissioner was therefore justified in discounting Klein's opinion.

### 2. Villa Fairmont Records

Mack asserts that the records from Villa Fairmont establish that he suffers from severe psychosis and that the ALJ's conclusion—that Mack exhibited no psychotic features during his two week stay there—is not supported by the record. The Appeals Council, in its denial of review, affirmed the ALJ's conclusion regarding the Villa Fairmont records.

The first time Mack went to Villa Fairmont he was there for only one day. (AR 296-97.) The discharge summary indicates that a social worker thought he had "psychotic features," but also states that Mack "did not stay long enough to engage in our program." (AR 296-97.) After a second, two-week stay at Villa Fairmont, the discharge summary indicated that Mack suffered from depression without psychotic features. (AR 305.) Upon admission, Mack's thought process was logical with some paranoid content. (AR 305.) After admission, Mack was "articulate," "ha[d] made friends with many of his peers," and "continue[d] to make an effort in coping with his distress." (AR 305.) Mack did have two verbal disagreements while at Villa Fairmont, but the summary states that neither incident resulted in any physical contact. (AR 305.) Notably, the summary explicitly states that no

Case No. 12-cv-01221 NC
ORDER RE: SUMMARY JUDGMENT            11

psychotic symptoms had been observed in Mack. (AR 306.)

Although the Villa Fairmont records indicate that Mack sometimes had paranoid thoughts or hallucinations, the records also indicate that Mack was able to function in groups and did not exhibit or perhaps even suffer from psychosis. Substantial evidence thus supports the Commissioner's conclusion regarding the Villa Fairmont records.

### 3. Other Medical Opinions

Mack contends that the ALJ improperly weighed the other medical evidence in the record in determining that Mack did not suffer from severe psychosis and qualify as disabled at step three. The Appeals Council did not address any of the other medical opinions in its denial of review. (AR 2.)

#### a. Ede Thomsen, Ph.D.

The ALJ rejected the opinion of Dr. Thomsen, an examining physician, who concluded that Mack had "severe memory impairment with severe psychological symptoms." (AR 18.) The ALJ found that Dr. Thomsen drew her conclusion from a screening test administered to Mack and that her conclusion lacked supporting factual detail. (AR 18.) The ALJ also determined that Dr. Thomsen focused on Mack's childhood rather than his current symptoms, that she mischaracterized the records from John George, and that she ignored Mack's substance abuse issues. In addition, Dr. Thomsen's assessment was contradicted by the opinions of Dr. McDevitt, Dr. Morse, and the agency's reviewing physician, Dr. Ikawa. Thus the ALJ provided specific and legitimate reasons for rejecting Dr. Thomsen's opinion.

#### b. Roxanne Morse, Ph.D.

The ALJ also rejected the opinion of Dr. Morse, an examining physician, who concluded that Mack was "malingering" and described his reports of psychosis, paranoia, and depression as "unfounded and grossly exaggerated." (AR 243.) In reaching this conclusion, the ALJ relied on Dr. McDevitt's testimony that the tests that Dr. Morse conducted on Mack were primarily screening devices and cannot establish definitively whether a patient is malingering. (AR 18.) Dr. Morse's opinion is contradicted by Dr.

Thomsen's, Klein's, and Dr. McDevitt's opinions, and the ALJ stated legitimate and specific reasons for rejecting her opinion.

### c. Robert McDevitt, M.D.

Dr. McDevitt testified as a medical expert at the April 2011 hearing. Consultative physicians and medical experts may serve as substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989). The opinions of medical experts are evaluated under the same factors (the nature and extent of relationship with the claimant, the extent to which objective medical evidence supports the opinion, the extent to which the opinion is consistent with the record, and the area of expertise of medical source) used to assess other medical opinions. 20 C.F.R. § 416.927(e)(2)(iii); *see* 20 C.F.R. § 416.627(c)(1)-(6). McDevitt reviewed the record, but did not examine Mack, and therefore his opinion is generally entitled to less weight than an examining medical source or a treating source. 20 C.F.R. § 416.927(c).

McDevitt opined that Mack was responsive to the minimum doses of the medication he was on, and thus should be able to do simple, repetitive work. (AR 54-55, 51.) McDevitt found no clinical evidence in the record of any examiner or provider observing Mack in a state of hallucination as severe as he described his voices to be. (AR 49.) McDevitt also found that the LifeLong records and Klein's notes did not contain any testing or objective clinical evidence that supports Mack's characterization of his impairment. (AR 56.) McDevitt's opinion was that Mack has "severe mental health issues, whether described as schizoaffective, depressive or the result of PTSD . . . [but] the medical evidence of record does not supports [sic] the alleged severity of [Mack's] symptoms." (AR 15.)

The ALJ found McDevitt's opinion supported by the following evidence: (1) minimum doses of Mack's prescribed medications controlled his voices and mental health symptoms; (2) Mack's psychosis had not come to the attention of any professional prior to his filing for SSI; (3) alcohol and marijuana use increase the symptoms of depression, anxiety, and paranoia; and (4) the record contained very little objective evidence to support Mack's characterization of his symptoms. (AR 16, 18.) McDevitt

Case No. 12-cv-01221 NC
ORDER RE: SUMMARY JUDGMENT 13

testified that Dr. Morse's tests could not necessarily detect malingering, and that even Dr. Thomsen's tests indicate that Mack has "good concentration," which is "incompatible with a man with a severe mental disorder." (AR 50.)

In arriving at the same conclusion as McDevitt, the ALJ properly considered all the evidence in the record and expressly addressed in his written opinion the LifeLong records and Klein's assessment, Dr. Thomsen's assessment, Dr. Morse's assessment, the John George records, and the Alameda County records, as well as Mack's testimony. *See Magallanes*, 881 F.2d at 752-53 (affirming ALJ's reliance on testimony of medical expert where opinion is consistent with other evidence in the record and ALJ did not rely on expert's testimony alone to reject opinions of treating physicians). As discussed above, Klein's assessment cannot be according controlling weight because she is not an acceptable medical source. Dr. Thomsen's assessment, which was contradicted by the record, the ALJ discounted for the legitimate and specific reason that it lacked factual support. The ALJ also disagreed with Dr. Morse's conclusions based on the type of tests Dr. Morse used to evaluate Mack and because her conclusions were also inconsistent with other evidence in the record. The ALJ did not state that he gave McDevitt controlling weight. Rather, the decision indicates that the ALJ considered the evidence in the record and concluded that it supported a finding that Mack's impairments are not sufficiently severe to be disabling under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 16.)

Accordingly, the Court finds that the ALJ properly considered the medical opinions and affirms the ALJ on this issue.

**C. Substantial Evidence Supports the ALJ's Determination that Mack Has the Capacity to Perform Medium Work.**

At step four, the ALJ considered whether, in spite of his mental health issues, Mack retained the capacity to work and found that he could perform medium work. Based on his analysis of the aforementioned medical opinions, the ALJ found that the severity of Mack's claimed impairment was not substantiated by objective medical evidence and thus considered the credibility of Mack's testimony in assessing his capacity to work. In

determining that Mack's statements about the severity of symptoms were not credible, the ALJ considered the following evidence: the fact that Mack was with the general prison population and not treated for mental illness while incarcerated; that minimal doses of his prescribed medications addressed his hearing voices; that records from Alameda County indicated that Mack suffered from depression that only moderately impaired him; that no psychotic symptoms were observed during his two week stay at Villa Fairmont; that Dr. Thomsen's report was based on a screening test and not factual content; and that Klein's report was based on material provided by Mack. In addition, the ALJ rejected Dr. Morse's conclusion that Mack was malingering and has no significant mental limitations, which indicates that he did not discount Mack's testimony entirely. Rather, the ALJ found that Mack had "medically determinable impairments" that could cause his described symptoms, but that Mack's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible." (AR 17.) Substantial evidence in the record indicates that while Mack suffers from some mental health issues, the severity of his symptoms as he describes them is not supported by the evidence of record. Accordingly, the Court affirms the ALJ on this issue.

Because the ALJ found that Mack did not have any past relevant work, he assessed whether, considering Mack's residual functional capacity, age, education, and work experience, he is capable of doing other work. The ALJ determined that Mack is capable of "medium work," but recommended that his employment should not include interaction with the public, based on the evidence of Mack's propensity to become irritated and depressed when he disagrees with others. The ALJ considered that Mack earned his GED while in prison, that the medications Mack is currently on controls the voices and helps him sleep, and Mack's testimony that he has learned to cope with and control his impulses. That the ALJ recommended that he not work with the public indicates that in spite of finding Mack "not disabled," the ALJ considered the evidence that Mack suffers from some mental impairment and that interacting with others can be challenging for him. Substantial evidence supports this conclusion, including evidence in Thomsen's and Klein's reports that

Mack has good concentration and executive functioning, can understand and carry out simple instructions, and can make simple work-related decisions. (AR 262, 379.)

## IV. CONCLUSION

After properly weighing the medical opinions in the record, substantial evidence supports the ALJ's finding that Mack suffers from some mental health issues, but none so severe as to find him disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff's motion for summary judgment is DENIED. Defendant's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Date: January 15, 2013

Nathanael M. Cousins
United States Magistrate Judge